UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

JEFFREY ALAN NICHOLS                                              PETITIONER
Reg #32974-045

VS.                              2:20-CV-00109-LPR-JTR

DEWAYNE HENDRIX, Warden
FCI - Forrest City                                                RESPONDENT

### RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Lee P. Rudofsky. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the entry of this Recommendation. The failure to timely file objections may result in waiver of the right to appeal questions of fact.

### I. Introduction

Petitioner Jeffrey Alan Nichols, who is currently incarcerated in the Federal Correctional Institution-Low in Forrest City, Arkansas, has filed a *pro se* 28 U.S.C. § 2241 Petition for Writ of Habeas Corpus. *Doc. 1*. According to Nichols, he is 56 years old and suffers from high blood pressure, diabetes, high cholesterol and

chronic bronchitis. Nichols alleges that, due to the COVID-19 pandemic, he meets the guidelines for a transfer to home confinement.[1]

For the following reasons, Nichols' habeas Petition should be dismissed, without prejudice.

## II. Discussion

On March 27, 2020, Congress enacted the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"). *See* CARES Act, Pub. L. No. 116-136, 134 Stat 281. The CARES Act increases the length of time the Bureau of Prisons may allow a federal inmate to spend in home confinement, by providing that during the "emergency period [caused by the Coronavirus] . . . the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" is left to the discretion of the Director of the BOP.[2]

---

[1] Although Nichols makes one passing reference to "compassionate release," all the other allegations in his § 2241 petition address his desire to be released from the BOP to home confinement.

Compassionate release and home confinement are distinct remedies. Under § 2241, this Court lacks jurisdiction to consider a request for compassionate release because it seeks a modification of sentence that must be addressed by the sentencing court. *See* 18 U.S.C. § 3582(c)(1)(A); *Smoke v. United States*, No. CIV. 09-2050, 2009 WL 5030770, at *4 (D. Minn. Dec. 14, 2009) (a request for compassionate release must be filed as a motion under 18 U.S.C. § 3582 in the district court that imposed the sentence).

If Nichols wishes to pursue a claim for compassionate release, he must file such request with the *sentencing court* pursuant to 18 U.S.C. § 3582(c)(1)(A). This Recommendation only addresses Nichols' § 2241 claim requesting this Court to order the BOP to transfer him to home confinement.

[2] This provision of the CARES Act states:
During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is

2

On April 3, 2020, the United States Attorney General William Barr exercised his emergency authority under the CARES Act by:

> [E]xpand[ing] the cohort of inmates who may be considered for home release [based] upon my finding that emergency conditions are materially affecting the functioning of the Bureau of Prisons.  I hereby make that finding[.]

*See* Memorandum from U.S. Attorney General William Barr to the Director of the BOP, *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020).[3]  Attorney General Barr directed the BOP to "move with dispatch in using home confinement, where appropriate, to move vulnerable inmates out of these institutions." *Id*.

In his habeas Petition, Nichols alleges that, because he meets the requirements for transfer to home confinement, this Court should order the BOP to send him home. Even if Nichols meets the criteria for home confinement, that fact alone does not establish that his constitutional rights are being violated by his continued incarceration in the BOP, much less that this Court has the legal authority to order the BOP to transfer him to home confinement.

---

authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CARES Act, Pub. L. No. 116-136 at § 12003(b)(2).

The CARES Act expands the interval of time a prisoner can now be placed in home confinement from "the shorter of 10 percent of the term of imprisonment of that prisoner or six months," under 18 U.S.C. § 3624(c)(2), to a completely open-ended period of time, based on the BOP's exercise of its discretion.

[3] Accessible online at https://www.justice.gov/file/1266661/download.

Under well-established case law, a federal prisoner does *not* have a constitutional right to serve a sentence in any particular place. *See Meachum v. Fano*, 427 U.S. 215, 224-225 (1976) ("That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with the more severe rules."); *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996) ("[T]here is no liberty interest in assignment to any particular prison."). Thus, absent truly compelling facts, it is likely to be difficult for Nichols to plead and prove that he has a protected liberty interest in a transfer to home confinement.

Congress has vested the BOP with broad authority to determine *where* prisoners should serve their sentence. *See* 18 U.S.C. § 3621(b) ("2020 WL 2490101 ("The Bureau of Prisons shall designate the place of the prisoner's imprisonment, . . ."); 18 U.S.C. § 3624(c)(4) ("Nothing in this subsection shall be construed to limit or restrict the authority of the [BOP] under section 3621").

Before Nichols can challenge the BOP's exercise of this authority, he must request the BOP to transfer him to home confinement.[4] If that request is denied, Nichols must then fully and completely exhaust his administrative remedies within

---

[4] "A prisoner may bring a habeas action challenging the BOP's execution of his sentence only if he first presents his claim to the BOP." *Mathena v. United States*, 577 F.3d 943 (8th Cir. 2009) (citing *United States v. Chappel*, 208 F.3d 1069, 1069 (8th Cir. 2000)).

the BOP.[5]  Here, Nichols does *not* even allege that he has requested the BOP to transfer him to home confinement, much less that he has completed exhausting the BOP's administrative review process.  Thus, it seems Nichols may be using this § 2241 habeas action to request the Court, as a matter of first impression, to transfer him to home confinement, and completely bypass the BOP's exercise of its express statutory authority over prisoner placement.

Nothing in the CARES Act or Attorney General Barr's Memo diminishes the BOP's placement authority or a prisoner's legal obligation to challenge and administratively exhaust the BOP's allegedly improper exercise of that authority *before* initiating a § 2241 habeas claim that the BOP's decision violated the prisoner's constitutional rights.  *See United States v. Walker*, No. CR16331DWFLIB, 2020 WL 2490101, at *2 (D. Minn. May 14, 2020) ("Neither the CARES Act nor the FSA [First Step Act] alters" the BOP's exclusive authority to determine the placement of prisoners."); *United States v. James*, Cr. No. 15-255 (SRN) 2020 WL 1922568 at *2 (D. Minn. Apr 21, 2020) ("the BOP has exclusive authority to determine the placement of prisoners."); *see also United States v. Kluge*, No. 17-cr-61 (DWF), 2020 WL 209287 at *3 (D. Minn. Jan 14, 2020) ("Nothing in

---

[5] Administrative exhaustion "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal citations omitted). *See also* BOP's Administrative Remedy Program, 28 C.F.R. § 542.10 et seq. (June 2020).

the statutes amended by the FSA permits the Court to place Defendant in home confinement. Under the FSA, the authority to place a prisoner remains with the BOP."); *Xiao v. La Tuna Fed. Corr. Inst.*, Civ. No. EP-19-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General - and by delegation the BOP - has the exclusive authority and discretion to designate the place of an inmate's confinement.").

Thus, even if I were to *assume* that Nichols has properly made a request for transfer with the BOP and fully exhausted the BOP's adverse decision on that matter, it would be questionable whether the BOP's transfer decision would be reviewable at all by this Court. In *Porche v. Salazar*, 2019 WL 1373683, *1 (D. Ore. March 5, 2019), the court rejected a habeas petitioner's challenge to the BOP's denial of a transfer request, finding that the BOP's placement decision was not reviewable. The court based its ruling on language added to 18 U.S.C. § 3621(b), as part of the First Step Act of 2018,[6] specifying that the BOP's "'designation of a place of imprisonment . . . is not reviewable by any court.'" *Id.* (*quoting* § 3621(b)).

---

[6] Enacted into law on December 21, 2018, the First Step Act amended various statutes, including 18 U.S.C. § 3621, which governs the BOP's overarching authority to determine the place where prisoners will serve their sentence, and 18 U.S.C. § 3624(c), which addresses prerelease custody, including home confinement. *See* First Step Act, Pub. L. No. 115-391, 132 Stat 5194. Thus, in § 2241 habeas actions brought by prisoners challenging the BOP's decision to deny a requested transfer to home confinement, district courts must first carefully consider whether the BOP's decision is even reviewable based on the unconditional nature of the language added to § 3621(b).

Finally, even if this Court had the authority to review the BOP's final decision denying Nichols' request for home confinement, for Nichols to state a viable due process claim he would likely be required to allege that the BOP's decision went beyond merely being wrong and met the much higher bar of *not* being made "in good faith." *See Miller v. Whitehead*, 527 F.3d 752, 758 (8th Cir. 2008) (finding that inmates who challenged the denial of their request for immediate transfer to a halfway house failed to present any evidence "the warden acted in other than good faith when he concluded that immediate RRC placement was not appropriate.").

### III. Conclusion

On its face, Nichols's § 2241 habeas petition fails to establish that he has exhausted his administrative remedies within the BOP, a prerequisite that must be satisfied, absent futility, before this Court can exercise jurisdiction over his claim. Additionally, the allegations in Nichol's habeas petition are so vague that it is impossible to determine if the BOP has even been given an opportunity to address his request for transfer to home confinement, much less that, in denying his request, the BOP has not acted in good faith; thereby implicating a due process "liberty interest" in home confinement sufficient to state a viable constitutional claim under § 2241.

IT IS THEREFORE RECOMMENDED THAT the Court dismiss this habeas action, without prejudice.

DATED this 12th day of June, 2020.

                                                       _____
                                                       UNITED STATES MAGISTRATE JUDGE